UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | | |
|---|---|---|
| TERESA A. PAWLOWSKI, | ) | CIV. 11-5065-JLV |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| MARLOW L. SCHERBENSKI, | ) | **REPORT AND RECOMMENDATION** |
| individually, and KTD | ) | |
| ENTERPRISES, INC., d/b/a | ) | |
| WEATHERED VANE, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**INTRODUCTION**

This matter is before the court on plaintiff Teresa Pawlowski's complaint alleging that defendants discriminated against her on the basis of her disability in violation of the Americans With Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 et seq.  Ms. Pawlowski also asserts state law claims alleging that defendants violated the South Dakota Human Relations Act, SDCL §§ 20-13-1 et seq., and committed the common law tort of intentional infliction of emotional distress. Pending before the court is defendants' motion for summary judgment urging dismissal of Ms. Pawlowski's ADA claim for failure to state a claim on which relief can be granted.[1]  The district court, the Honorable Jeffrey L. Viken,

---

[1]Although defendants' motion is denominated a motion for summary judgment, in reality it is a motion for partial summary judgment as defendants seek judgment in their favor on the merits only as to plaintiff's ADA claim.

referred defendants' motion to this magistrate judge for a recommended

disposition pursuant to 28 U.S.C. § 636(b)(1)(B).

## FACTS

The sole issue presented by defendants' motion is whether any of the

named defendants is an "employer" under the ADA by reason of employing at

least 15 employees for at least 20 weeks in a year.  The following recitation of

facts is limited to that issue.

Defendant Marlow Scherbenske is married to Janet Scherbenske, who is

not named as a party herein.  On March 18, 2004, the Scherbenskes

incorporated KTD Enterprises, Inc. ("KTD").  Marlow is the president of KTD

and Janet is the vice president.  Marlow and Janet are the sole shareholders

and directors of KTD.  KTD does business under the name "Weathered Vane,"

which is a retail store that sells gifts, gourmet food, and decorating items.

Janet and Marlow manage Weathered Vane jointly, splitting the duties.

Together, they make all policies and management decisions.  Neither has the

power or ability to fire the other.  There is no supervisor to which either Marlow

or Janet must answer.  Neither Marlow nor Janet have employment

agreements with Weathered Vane, although both receive payroll checks from

KTD.

The employee workweek at Weathered Vane is Sunday through Saturday.

All employees except Clay Soby keep track of their time by recording it on a

2

time sheet posted in the stock room.  Janet then enters the information from these time sheets into Excel and QuickBooks, and then transmits that information to Weathered Vane's accountant who calculates payroll taxes for the employees and the business and pays the Internal Revenue Service.  Janet then issues paychecks to the employees based on the information from the time sheets and the withholding calculation.  She uses this same information in sending reports for unemployment insurance, worker's compensation reports, and the corporate tax return.  Because Clay Soby did not submit time sheets, his paychecks are not issued by this procedure.

Clay Soby is an acquaintance of Janet and Marlow who has specialized knowledge of computers.  He has a regular, full-time job with another employer other than Weathered Vane.  Mr. Soby did computer work for Weathered Vane, coming to Weathered Vane after he finished his hours at his regular job.  The work he did for KTD consisted of cleaning out and updating KTD's computers.

Plaintiff and defendants dispute whether Mr. Soby came "often" or only once or twice a year.  Because Mr. Soby did not have an independent business, the South Dakota Department of Labor advised KTD (following an audit) that it should withhold payroll taxes from Mr. Soby's pay.  Thereafter, KTD did withhold payroll taxes from pay earned by Mr. Soby.

The parties disagree over whether Mr. Soby is an employee of KTD.  They also disagree over the method of how the employees of KTD should be

calculated.  Defendants' calculation results in the conclusion that KTD did not have 15 or more employees for 20 weeks or more in either 2009 or 2010. Plaintiff's calculation results in the conclusion that KTD did have 15 or more employees for 20 weeks or more in either 2009 or 2010.

Defendants used the data in her QuickBooks program to create a document for this litigation showing the hire and release date for all employees. Defendants also prepared, for this litigation, a spreadsheet showing the name of each employee who worked during 2009 and 2010, and noting start and termination dates in one column of the chart.  Defendants included in this chart any employee who started in the middle of the week, employees who were off that week, and all full time and part time employees.  Not included in defendants' chart are employees who terminated before the end of the week. Defendants also did not include Clay Soby, Janet Scherbenske, or Marlow Scherbenske in their calculations.  Using this method of calculation, defendants assert that they had 15 or more employees in only 12 weeks of 2009, and in only 16 weeks of 2010.

If employees who terminated in the middle of the week are included in the calculation, and even if Clay Soby is included in the calculation, defendants assert that they had 15 or more employees in only 13 weeks of 2009, and in only 18 weeks of 2010.

4

Ms. Pawlowski and defendants agree that neither Janet Scherbenske nor Marlow Scherbenske should be counted as employees.  All parties further agree that Marlow Scherbenske is not subject to individual liability under the Americans With Disabilities Act.

Ms. Pawlowski asserts that KDT employed 16 employees for 20 or more calendar weeks in 2009 if Clay Soby is counted.  She apparently concedes that, even counting Mr. Soby, KDT employed only 14 employees in 2010.[2]  See Docket No. 21-5, pages 1-2; Docket No. 27, pages 7-8.  The difference between Ms. Pawlowski's calculation and defendants' calculation is this.  Defendants looked at each week in each of the two years and counted only those weeks in which 15 or more employees were on the payroll for that week.  Ms. Pawlowski counted every employee who worked at least 20 weeks in a given year, regardless of how many other employees were working at the same time as any given employee.  Thus, defendants' motion for summary judgment on Ms. Pawlowski's ADA claim raises the legal issue of how employees are to be counted.

---

[2]Plaintiff initially asserted that Nicole Long and Ramona Delong were employed in 2009 and possibly 2010, even though they were not reflected in defendants' business records as employees during those years.  See Docket No. 21-5, page 1.  Plaintiffs' attorney contacted these two women to find out if they recalled working for defendants in 2009 or 2010.  See Docket No. 28, page 2.  Neither woman was completely sure, but both believed they had terminated employment with defendants at the end of 2008.  Id.  On the basis of this information, plaintiff agrees for purposes of summary judgment that neither woman should be counted.  See Docket No. 27 at pages 7-8.

5

## DISCUSSION

**A.    Summary Judgment Standard**

The instant motion was prompted by the district court's order indicating that it thought the numerosity issue implicated the court's subject matter jurisdiction.  As the parties agree, the numerosity issue goes to the merits of the plaintiff's claim under the ADA, but it is not jurisdictional.  See Arbaugh v. Y & H Corp., 546 U.S. 500, 513-15 (2006) (holding that the threshold number of employees for application of Title VII is an element of plaintiff's *prima facie* case and not jurisdictional in character); Nugara v. Nebraska Assn. of Pub. Employees, 2011 WL 2680480 at * 5-6 (D. Neb. July 8, 2011) (applying the Arbaugh holding to the numerosity requirement under the ADA).   Accordingly, a motion to dismiss for lack of subject matter jurisdiction would be inapposite here and the searching standard for analyzing subject matter jurisdiction inapplicable.  Instead, defendants have chosen to frame the issue as one for summary judgment on undisputed facts.  The standard for analyzing such a motion is as follows.

Under Rule 56(c) of the Federal Rules of Civil Procedure, a movant is entitled to summary judgment if the movant can "show that there is no genuine issue as to any material fact and that [the movant] is entitled to judgment as a matter of law."  In determining whether summary judgment should issue, the court views the facts, and inferences from those facts, in the light most

6

favorable to the nonmoving party.  See Matsushita Elec. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986).  The burden is placed on the moving party to establish both the absence of any genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(a).

Once the movant has met its burden, the nonmoving party may not simply rest on the allegations in the pleadings, but must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); FED. R. CIV. P. 56(e)(each party must properly support its own assertions of fact and properly address the opposing party's assertions of fact, as required by Rule 56(c)).  In determining whether a genuine issue of material fact exists, the court views the evidence presented in light of which party has the burden of proof under the underlying substantive law.  Id.  Summary judgment will not lie if there is a genuine dispute as to a material fact, that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.

The substantive law identifies which facts are "material" for purposes of a motion for summary judgment.  Anderson, 477 U.S. at 247.  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted."  Id. at 248 (citing 10A C.

Wright, A. Miller, & M. Kane, FEDERAL PRACTICE AND PROCEDURE § 2725, pp.

93-95 (1983)).  The Supreme Court has further explained that:

> the issue of material fact required by Rule 56(c) to be present to
> entitle a party to proceed to trial is not required to be resolved
> ***conclusively*** in favor of the party asserting its existence; rather, all
> that is required is that sufficient evidence supporting the claimed
> factual dispute be shown to require a jury or judge to resolve the
> parties' differing versions of the truth at trial.

Anderson, 477 U.S. at 248-49 (quoting First National Bank of Arizona v. Cities

Service Co., 391 U.S. 253, 288-89 (1968)(emphasis added)).  Essentially, the

availability of summary judgment turns on whether a proper jury question is

presented.  See Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970).

"The inquiry performed is the threshold inquiry of determining whether there is

the need for a trial-whether, in other words, there are any genuine factual

issues that properly can be resolved only by a finder of fact because they may

reasonably be resolved in favor of either party."  Anderson, 477 U.S. at 250.

## B.     Whether KTD Meets the Numerosity Requirement

Under the Americans With Disabilities Act ("ADA"), liability can ensue for

an employer who discriminates against an employee on the basis of his or her

disability.  See 42 U.S.C. §§ 12111(2) and (5)(A), 12112(a).  However, the

ADA–like other federal antidiscrimination laws–does not apply to very small

businesses.  Clackamas Gastroenterology Assoc., P.C. v. Wells, 538 U.S. 440,

441 (2003).

An "employer" is defined by the ADA as "a person engaged in an industry affecting commerce who has 15 or more employees for each working day in each of 20 or more calender weeks in the current or preceding calendar year . . ." See 42 U.S.C. § 12111(5)(A).[3]  This has been termed the "numerosity requirement."  Since Ms. Pawlowski's employment with KTD was terminated in 2010, she must show that the numerosity requirement is met for either the year 2009 or 2010.  Id.

Ms. Pawlowski and defendants agree that Janet and Merlow Scherbenske should not be counted as employees.  See Docket No.16, pages 7-10; Docket No. 27 at page 7.  This is consistent with the law.  See Clackamas, 538 U.S. at 445-51.

Both parties also agree that Merlow Scherbenske is not subject to individual liability under the ADA.  See Docket No. 16, at 6-7; Docket No. 27, at 10.  This, also, is the law.  See Albra v. Advan, Inc., 490 F.3d 826, 830 (11th Cir. 2007); Butler v. City of Prairie Vuillage, 172 F.3d 736, 744 (10th Cir. 1999); EEOC v. AIC Security Investigations, Ltd., 55 F.3d 1276, 1280-82 (7th Cir. 1995).  Cf. Spencer v. Ripley County State Bank, 123 F.3d 690, 691-92 (8th Cir. 1997) (no individual liability under Title VII); Lenhardt v. Basic

---

[3]When the ADA was first enacted, Congress provided for a two-year phase-in period during which the law only applied to employers which employed 25 or more employees.  Thus, in reviewing the case law, there are a few opinions making reference to a 25-employee requirement.  The numerosity requirement has been at 15 employees since 1992.

Institute of Technology, Inc., 55 F.3d 377, 381 (8th Cir. 1995) (no individual

liability under analogous Missouri discrimination statute).[4]

      The issue squarely presented by defendants' motion is how employees

are to be counted under the ADA.  Does one look at each of 52 weeks in a given

year and count the number of employees in each week, counting toward the

20-week total only those weeks in which there are 15 or more employees?

Defendants assert that this is the proper method of counting employees.  Or

does one tally up the number of weeks each employee worked during a given

year, and then add up the number of employees who worked at least 20 weeks,

as plaintiff argues the court should do?  The beginning point for this

discussion is Walters v. Metropolitan Educational Enterprises, Inc., 519 U.S.

202 (1997).

      In Walters, the Supreme Court construed the numerosity requirement

under Title VII.  Id. at 204.  The specific issue before the Court was whether an

employer "has" an employee on a particular day if the employee is simply on

the payroll, or if an employer only "has" an employee on that day if the

employee actually earns compensation on that day.  Id.  The pertinent

language under Title VII defined an "employer" as "a person engaged in an

industry affecting commerce who has fifteen or more employees for each

---

     [4]The Eighth Circuit has not yet addressed the question of whether
individuals may be held liable under the ADA.

working day in each of twenty or more calendar weeks in the current or preceding calendar year." Id. at 205 (quoting 42 U.S.C. § 2000e(b)). The definition of "employer" under the ADA is identical to the Title VII definition. Compare 42 U.S.C. § 2000e(b), with 42 U.S.C. § 12111(5)(A) (an employer is "a person engaged in an industry affecting commerce who has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year, . . .").

Monday through Friday were "working days" for the employer in Walter. Id. at 205. On each working day, the employer had between 15 and 17 employees on its payroll. Id. However, there were only nine weeks of the year in which 15 or more employees were actually being compensated. Id. This was because there were two part time hourly employees who ordinarily skipped one working day each week. Id.

Both parties agreed that all persons on the employer's payroll were "employees." Id. at 206. However, referring to the language of the statute, the employer argued that it only "has" an employee on a day that the employee is receiving compensation. Id.

The Court adopted the "payroll method" of determining the numerosity question. Id. at 207. The Court held that if there is an employer-employee relationship on the day in question, the employee is counted on that particular day (i.e. the employee is "on the payroll"), even if the employee did not work

11

that day and, thus, did not earn compensation on that particular day.  Id. at 207, 211-12.  The Court stated that "an employer 'has' an employee if he maintains an employment relationship with that individual."  Id. at 207.  In so holding the Court overruled existing Eighth Circuit authority to the contrary.  Id. at 206 (citing EEOC v. Garden & Assoc., Ltd., 956 F.2d 842, 843 (8th Cir. 1992)).  The Court's interpretation of Title VII is consistent with the EEOC's interpretation of an identical definition of "employer" under the Age Discrimination in Employment Act.  Id. at 207 (citing 29 U.S.C. § 630(b); EEOC Notice No. N-915-052, Policy Guidance: Whether Part-Time Employees Are Employees (Apr. 1990)).  It is also congruent with the Department of Labor's definition of "employer" under the Family and Medical Leave Act.  Id. (citing 29 U.S.C. § 2611(4)(A)(I); 29 C.F.R. § 825.105(b) - (d) (1996)).

The Court discussed the contrary decision below by the Seventh Circuit.  Id. at 208-11 (discussing E.E.O.C. v. Metropolitan Educational Enterprises, Inc., 60 F.3d 1225 (7th Cir. 1995)).  The Seventh Circuit had reasoned that if Congress meant to focus only on the existence of the employment relationship in counting employees, the phrase "for each working day" would be rendered superfluous.  Id. at 208-09.  The Supreme Court disagreed, countering that giving the phrase "has fifteen or more employees" its ordinary meaning did not render the phrase "for each working day" superfluous.  Id. at 209.  Rather, the Court held that the phrase "for each working day" added a qualifier that

clarified whether employees who departed in the middle of a calendar week should be counted, and whether employees who depart after the end of the workweek, but before the end of the calendar week should be counted.  Id. Because the parties in this action parse the language of the Walters opinion on this point, it is helpful to set out the Court's language precisely:

> But we do not agree that giving "has fifteen or more employees" its ordinary meaning renders "for each working day" superfluous. Without that qualification, it would be unclear whether an employee who departed in the middle of a calendar week would count toward **the 15-employee minimum for that week**; with the qualification, it is clear that he does not.  Similarly, the adjective "working" within the phrase "for each working day" eliminates any ambiguity about whether employees who depart after the end of the workweek, but before the end of the calendar week, count toward **the 15-employee minimum for that week**.

Id. (emphasis supplied).  The Court went on to state explicitly that the phrase "for each working day" was intended by Congress to eliminate ambiguity about whether to count employees toward the weekly total if their employment either began or ended mid-week.  Id. at 209-10.

The employer in Walters argued that the Court's payroll method would produce impractical consequences.  Id. at 210.  "For example, an employee who works irregular hours, perhaps only a few days a month, will be counted toward the 15-employee minimum for every week in the month."  Id.  The Court did not disagree with the employer's example, but pointed out some irregularities and needless complication from the application of the employer's compensation-earned method of counting employees.  Id.  Under the Court's

13

interpretation, "by contrast, all one needs to know about a given employee for a given year is whether the employee started or ended employment during that year and, if so, ***when***.  He is counted as an employee for each working day after arrival and before departure."  Id. at 211 (emphasis added).

This court interprets the above passages from Walters to mean that an employer must have 15 or more employees on its payroll ***at the same time*** for at least 20 weeks out of the year.  This is the interpretation advanced by defendants in their summary judgment brief.  Twice the Walters Court made reference to "the 15-employee minimum ***for that week***."  Id. at 209.  If an "employer" under the ADA was merely one who employed 15 people who each worked 20 weeks at some time during the year, the statute and the Walters Court would not qualify their statement with the phrase "for that week."

A case which is somewhat analogous is Clements v. Housing Authority for the Borough of Princeton, 532 F. Supp. 2d 700 (D.N.J. 2007).  In Clements, the employer had produced quarterly business records showing that it never employed 15 or more employees in more than one quarter over the two years applicable to Clements' claims.  Id. at 703-06.  Clements, however, produced another business record that showed that the employer employed twenty employees over the course of the entire year.  Id.  Clements argued that her document created a genuine issue of material fact preventing the entry of summary judgment against her.  Id.  The district court rejected Clements'

14

argument, stating that the ADA required that an employer have on its payroll 15 "employees employed at any one time." Id.  Here, defendants' proof shows that, even including Clay Soby, defendants never had 15 employees employed at the same time on KTD's payroll during at least 20 weeks of the year.[5] Ms. Pawlowski's proof does not contravene defendants' facts; she merely shows that 15 employees worked a total of 20 weeks during the entire year, but not all during the same 20 weeks.

Although cases discussing this exact point are scarce, there are other sources that point to the same conclusion.  The EEOC publishes a Compliance Manual to assist in understanding federal antidiscrimination laws.  In that manual, the EEOC states: "In determining whether the 20-week requirement is met, only calendar weeks when the employer had the requisite number of employees for each workday of that week are counted.  However, the 20 weeks

---

[5]The Supreme Court in Walters noted that its "payroll method" of counting employees emphasized the existence of an employment relationship between the employer and the person being counted as an employee, not merely the presence of that person on the payroll.  Walters, 519 U.S. at 211-12. The presence on the payroll of an individual who "is not an 'employee' under traditional principles of agency law . . . would not count toward the 15-employee minimum."  Id. at 211 (citing Nationwide Mut. Ins. Co. v. Darden, 503 U.S. 318, 323-24 (1992)).  Applying the "traditional principles of agency law," the court has serious reservations about whether Clay Soby was an employee as opposed to an independent contractor.  However, because Ms. Pawlowski cannot show that defendants had the minimum number of employees even if Mr. Soby is counted as an employee, the court need not resolve the issue of his status.

need not be consecutive.  In addition, an employee who started or ended employment during the middle of a calendar week is counted as an employee on the days when s/he had an employment relationship with the employer." See EEOC Compliance Manual, Section Two: Threshold Issues, subpart 2-III Covered Parties; Section A, 1 Who is an "Employee"?.  See http://www.eeoc.gov/policy/docs/threshold.html#2-III-B-1-a-I (near footnote 102) (April 11, 2012).  This explanation by the EEOC, the federal agency entrusted with the enforcement and implementation of the ADA (as well as other laws), supports defendants' reading of the law.

 If Ms. Pawlowski's interpretation of the definition of "employer" under the ADA were correct, the statute would more appropriately read "15 or more employees, each of which were employed for a total of 20 or more calendar weeks" in a year.  Instead, the statute reads:  "15 or more employees for each working day in each of 20 or more calendar weeks."  The clause "for each working day" is a dependent clause modifying "employees."  Removing that clause from the sentence, the sentence would read "15 or more employees in each of 20 or more calendar weeks."  In other words, 15 or more employees at the same time in 20 or more weeks.[6]

---

 [6]The administrative record below is not helpful in resolving this issue. The administrative agency evaluated Ms. Pawlowski's charge of discrimination under South Dakota state law only.  See Docket No. 1-2, at page 2.  Under South Dakota antidiscrimination law, there is no numerosity requirement for employers.  See SDCL § 20-13-1(7).

In addition, defendants point out that under Ms. Pawlowski's interpretation of the definition of "employer," an employer could employ 8 employees for the first 32 weeks of the year, and 7 new and different employees for the second 20 weeks of the year and meet the numerosity requirement. Counting the number of employees who worked twenty weeks or more, one would add up 15 such individuals under the above example. This result would ensue despite the fact that the employer never had 15 persons on the payroll at any given time. This is clearly not what Congress intended when it defined the term "employer." The 15-employee threshold was meant to eliminate very small employers from the reach of federal antidiscrimination laws. <u>Clackamas</u>, 538 U.S. at 441. Congress defined "employer" in such a way as to preclude application of the law to employers who had 14 or fewer employees on their payrolls for 33 or more weeks of the year. Defendants fit that description. Accordingly, it is this court's recommendation that summary judgment be entered in defendants' favor on Ms. Pawlowski's ADA claim. Dismissal of the ADA claim, if this court's recommendation is adopted by the district court, would be with prejudice.

**C.    Ms. Pawlowsi's State Law Claims**

In addition to her ADA claim, Ms. Pawlowski also pleaded claims under state law in counts 2 and 3 of her complaint. <u>See</u> Docket No. 1, pages 4-5. Jurisdiction for the ADA claim rested on 28 U.S.C. § 1331 which provides for

17

jurisdiction over claims founded on federal law.  Jurisdiction for the state law claims rests on a legislative grant of supplemental jurisdiction under 28 U.S.C. § 1367.  Under the supplemental jurisdiction statute, a court may dismiss state law claims if it has dismissed all claims over which it had original federal question jurisdiction.  See 28 U.S.C. § 1367(c)(3).  Such a dismissal tolls the period of limitations on the state law claims for 30 days so as to allow the plaintiff to refile her state law claims in state court.  See 28 U.S.C. § 1367(d).

This court recommends that Ms. Pawlowski's state law claims be dismissed without prejudice pursuant to § 1367(c)(3).  This case is relatively newly filed.  Little discovery has taken place because the numerosity issue was raised very early in the case.  No other motions practice has been pursued by the parties.  Thus, there is very little prejudice to either party if Ms. Pawlowski is required to litigate her state law claims in state court.  Furthermore, state courts are the most appropriate courts to adjudicate harms founded on state law.  Wierman v. Casey's General Stores, 638 F.3d 984, 1003 (8th Cir. 2011) (citing Ivy v. Kimbrough, 115 F.3d 550, 552-53 (8th Cir. 1997) (state law claims are "ordinarily" dismissed under § 1367(c)(3) if the federal law claims are dismissed)).

## CONCLUSION

Based on the foregoing discussion, this court respectfully recommends granting the motion for summary judgment [Docket No. 14] made by

18

defendants, dismissing plaintiff's Americans With Disabilities Act claim with prejudice, and entering judgment in defendants' favor on that claim alone. This court further recommends that plaintiff's state law human rights claim and state law intentional infliction of emotional distress claim be dismissed without prejudice.

**NOTICE TO PARTIES**

The parties have fourteen (14) days after service of this report and recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1)(B), unless an extension of time for good cause is obtained.  See also Fed. R. Civ. P. 72(b)(2).  Failure to file timely objections will result in the waiver of the right to appeal questions of fact.  Objections must be timely and specific in order to require *de novo* review by the district court.  See Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990); Nash v. Black, 781 F.2d 665 (8th Cir. 1986).

Dated April 13, 2012.

BY THE COURT:

/s/ Veronica L. Duffy

VERONICA L. DUFFY
UNITED STATES MAGISTRATE JUDGE